"I remember sitting in class one day when the teacher left for a brief moment, and this boy stood on his chair and said in Japanese 'Raise your hand if you're not from Japan!' Everyone looked at me," Deja recalls. "I didn't raise my hand."

**Enjoying this article?** Click here to subscribe for full access. Just $5 a month.

She continues, "Because of my skin color, no one suspects that I was actually born and raised in Japan. I have been put down by strangers on the street. Sometimes I hear children behind me, if I'm talking in Japanese, saying things like 'the foreigner spoke Japanese!'"

Deja feels that Caucasian-Japanese hafu are more widely accepted by the people of Japan, pointing out that they can blend in better with their lighter skin. "At first glance, I think that Black-Japanese are seen as just black," she says. She added that younger people are generally more open-minded than middle-aged Japanese, a statement that may ring true in most parts of the world.

Even Nishikura admits that most people fail to recognize her Japanese side.

"In my day-to-day experience in Japan, on first encounter, I am often treated as a foreigner – not able to speak Japanese and a visitor to Japan," she observes. "I have been stopped by the police on the street and asked if I am Japanese or not. I usually just tell them I am hafu and that seems to end their questioning. Obviously, though, they are singling me out of the crowd as I don't look like the average Japanese."

Nishikura adds, "When someone recognizes and asks if I am hafu I am delighted! 'You see the

part of me that is Japanese?!'"

Despite any negativity she has faced in Japan, Deja enjoys being an ambassador for both of her backgrounds.

"I think that, with being hafu, it makes me happy that some Japanese people see me as a bridge to getting an American viewpoint."

It is unclear whether the Japanese government will ever recognize hafu as lifelong dual citizens, but one thing is certain: Japan, and the people who populate it, is changing. With an increased number of mixed race babies born each year, more and more ordinary Japanese will be exposed to the subtle diversification of their homogeneous homeland. Perhaps simply

becoming more visible will be the first step toward acceptance of biracial Japanese.

In the end, choosing to embrace its biracial citizens – or shun them – will be a decision with profound implications for Japan's uncertain future.

Hafu: The Mixed-Race Experience in Japan *will be shown at [Shibuya Uplink Theater](#) from October 5 until October 18. A post-screening Q&A session with director Megumi Nishikura and a person featured from the film will take place on October 8. Tickets can be purchased at the Shibuya Uplink box office.*

*J.T. Quigley is assistant editor of* The Diplomat.

**TAGS**

Features    Economy    Politics    Society    East Asia

biracial Japanese    Debito Arudou    hafu    Hafu documentary

Hafu: The Mixed-Race Experience in Japan    Japan demographics

mixed race in Japan

# Exhibit 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
IN THE MATTER OF THE EXTRADITION    :
OF MASAHIDE KANAYAMA                :       17 Crim. Misc. 1 Page 003 (ER)
                                    :
------------------------------------X       **NOTICE OF MOTION**

      PLEASE TAKE NOTICE that, upon the accompanying (1) Memorandum of Law of the United States of America in Support of Extradition; (2) Declaration of Elizabeth M.M. O'Connor, dated February 28, 2017, and all attachments thereto (filed in this matter on or about May 30, 2017); (3) documents in support of the Extradition Request submitted by the Embassy of Japan and certified on November 25, 2016, by Jason P. Hyland, Charge d'Affaires ad interim at the United States Embassy in Tokyo (filed in this matter on or about May 30, 2017); and (4) all prior pleadings herein, the United States of America, by and through its attorney, Joon H. Kim, Acting United States Attorney for the Southern District of New York, will move this Court for a certification of extraditability pursuant to Title 18, United States Code, Section 3184.

i

PLEASE TAKE FURTHER NOTICE that, pursuant to the Court's Order dated July 11, 2017, opposition papers are to be served by September 29, 2017, and reply papers are to be served by October 20, 2017.

DATED: New York, New York
       August 22, 2017

                                    JOON H. KIM
                                    Acting United States Attorney for the
                                    Southern District of New York

By:      _____
           TARA M. La MORTE
           Assistant United States Attorney
           1 St. Andrews Plaza
           New York, NY 10007
           (212) 637-1041
           tara.lamorte2@usdoj.gov

cc (via email): Patrick Joyce, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
IN THE MATTER OF THE EXTRADITION    :
OF MASAHIDE KANAYAMA                :     17 Crim. Misc. 1 Page 003 (ER)
                                    :
------------------------------------X

# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
# IN SUPPORT OF EXTRADITION

                    JOON H. KIM
                    Acting United States Attorney for the
                    Southern District of New York
                    1 St. Andrews Plaza
                    New York, NY 10007

Tara M. La Morte
Assistant United States Attorney
-Of Counsel-

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

DISCUSSION ............................................................................................................................... 6

A.   General Principles of Extradition .................................................................................. 6

B.   Japan's Extradition Request Satisfies the Test for Certifying the Fugitive as Extraditable .... 9

    1. This Court Has Authority Over the Proceedings ................................................. 9

    2. This Court Has Jurisdiction Over Kanayama ..................................................... 10

    3. The Applicable Extradition Treaty Is in Full Force and Effect. ......................... 10

    4. The Alleged Crimes Are Encompassed by the Extradition Treaty. .................... 11

    5. There Is Probable Cause That the Fugitive Has Committed the Offenses Charged. .......... 13

    6. The Evidence Japan Presents to Satisfy Its Burden of Proof Is Admissible ...................... 15

       a.  No Live Witnesses ................................................................................. 15

       b.  Certification of Documents ................................................................... 16

       c.  Limitations on the Fugitive's Evidence ................................................. 16

CONCLUSION ........................................................................................................................... 18

**PRELIMINARY STATEMENT**

On or about May 30, 2017, the United States filed a complaint (the "Complaint") for the extradition of Masahide Kanayama, at the request of the Government of Japan pursuant to the Treaty on Extradition Between the United States and Japan, U.S.-Japan, Mar. 26, 1980, 31 U.S.T. 892 (the "Extradition Treaty").

Japan has submitted a formal request for Kanayama's arrest, extradition, and surrender, supported by appropriate documents, to the United States Department of State. By statute, this Court must consider the evidence of criminality presented by Japan to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. If the Court finds the evidence sufficient to sustain the charges against Kanayama, the Court must "certify the same" to the Secretary of State, who decides whether to surrender the fugitive "according to the stipulations of the treaty or convention." *Id.*

As summarized in the Complaint, Kanayama is wanted by Japan on two counts of damaging religious and historical shrines, in violation of Article 260 of the Japanese Criminal Code. These offenses correspond to violations of various United States statutes, including, for example, New York Penal Law section 145.10 (criminal mischief in the second degree), and section 145.05 (criminal mischief in the third degree), both felony crimes. In particular, the Government of Japan alleges that on March 25, 2015, Kanayama used an oily liquid to deface the main gate of the Narita-san Shinsho-ji Temple in Narita, Japan, and to deface various portions of the Katori Jingu Shrine in Katori, Japan, collectively causing damages of approximately $21,300. Japan issued arrest warrants for Kanayama on or about December 8, 2015, and April 4, 2015, respectively, and those warrants have since been renewed.