Prefectural Police Headquarters

Dispatched to Narita Police Station for support

(iv) Details of the estimate

   a. Repair shop who made the estimate

    Kongo Gumi Co., Ltd.

    Location: Takamatsu Kensetsu Building, 7-12-7 Ginza, Chuo-ku, Tokyo

    Phone: +81-3-6853-8190

    (Person responsible for making the estimate of repair charges for Narita-san Shinsho-ji: TANGE)

   b. Estimated amount

    120, 500 JPY

(v) How I obtained the estimate

   a. Receipt of the estimate

It has been confirmed that the affected areas partially changed in color and size in Narita-san Shinsho-ji. Likewise, changes were observed in the condition of the affected portions pertaining to the crime, i.e., the three poles on the east side of So-mon (Main Gate). Therefore, in order to identify the current condition of the damage, I asked Narita-san Shinsho-ji to request the recalculated estimate of repair charges on October 5, 2017. Then, Sergeant ABE received the recalculated estimate at Narita-san Shinsho-ji on October 12, 2017.

   b. Interview with the repair shop

On October 12, 2017, I called the a/m repair shop and asked the estimated repair charges, how the charges were worked out, and the basis for calculation. The repair shop replied as follows:

   (a) Estimated amount

The repair charges for So-mon in Narita-san Shinsho-ji was estimated at 120,500 JPY, the same amount as the last time.

   (b) Repair method and the reason

- The repair method is oil removing with chemicals. The repair charges were estimated again as the same as the last time because the same work will

2

be required.

- Oil has penetrated into wood grains. It is therefore impossible to restore completely.

- If we should give a try, we will use chemicals. But we cannot predict exactly what will happen as a result of the work because the ingredients of the oil used are unknown.

- A possible result is that wood grains will stand out unnaturally in the shape of the stains. We are afraid that they will have a negative impact on the view.

- It is not realistic to clean the whole of the pole of So-mon with chemicals because the work area will be too large.

- The replacement of the pole will cost too much. In that case, it will also have a negative impact on the view because only the pole will be renewed while the rest will remain the same.

Thus, the repair method and the estimated repair charges were found to remain the same.

(vi) Outline of the repair shop who made the estimate

Kongo Gumi Co., Ltd. is a reputable repair shop specializing in repair, restoration and construction of cultural properties, historical buildings, fine arts and crafts. It was established in 578 and has experience of repair works on 11 cultural properties in recent years alone (3 national treasures, 6 important cultural properties, and 2 national/prefectural cultural properties).


II. Measurement of the damaged portions

(i) Result of the initial measurement

   a. Date of measurement

     April 19, 2015

   b. The person who measured the damaged portions

     Police Officer Yoshimi TAMAKI

     Judicial Police Officer

     Narita Police Station

  c. Result of measurement

   (a) Pole in the east side of So-mon, the first one from the south

    About 4 cm long and about 2 cm wide

   (b) Pole in the east side of So-mon, the second one from the south

    About 6 cm long and about 2 cm wide

   (c) Pole in the east side of So-mon, the third one from the south

    About 5 cm long and about 2 cm wide

 The poles are defaced by oily substances and Moist stains in the above mentioned size were observed on them.

(ii) Result of the remeasurement

  a. Date of remeasurement

   October 24, 2017

  b. The person who remeasured the damaged portions

   Inspector Koji HIJIOKA

  c. Result of remeasurement

   (a) Pole in the east side of So-mon, the first one from the south

    About 3.5 cm long and about 1 cm wide

   (b) Pole in the east side of So-mon, the second one from the south

    About 3 cm long and about 0.9 cm wide

   (c) Pole in the east side of So-mon, the third one from the south

    About 5 cm long and about 1.5 cm wide

 The moist stains got dry and became black penetrating into the poles in the above-mentioned size.


III. Reference

 A copy of the recalculated estimate is attached at the end of this report.

(Attached Paper 1)

Estimate

To: Narita-san Shinsho-ji Temple

Total Cost: ¥129,600

Repairing Cost: ¥120,000          Consumption Tax: ¥9,600

As the cost of repairing the *Somon* (Main Gate) of Narita-san (removal of oily substance)

We have estimated the above cost based on the itemized statement as per enclosure.

Date: October 6, 2017

Kongo Gumi Co., Ltd.

Tokyo Head Office: Takamatsu Kensetsu Building, 7-12-7 Ginza, Chuo-ku, Tokyo 104-0061
Telephone: 03 (6853) 8190 (Switchboard Number)
03 (6853) 8191

Kanto Branch: 1-41-7 Ashioricho, Tsurugashima City, Saitama-ken 350-2211
Osaka Office: 1-14-29 Shitennoji, Tennoji-ku, Osaka City 543-0051

(Attached Paper 2)

Removal of oily substance from the *So-mon* (Main Gate) of Narita-san

| (Number) | (Item) | (Shape & Size) | (Quantity) | (Unit) | (Unit Price) | (Amount) | (Summary) |
|---|---|---|---|---|---|---|---|
| | Removal of oily substance from poles of the Main Gate | Removal of stains from three poles | 3.00 | Piece | ¥30,000 | ¥90,000 | |
| | Chemicals for the abovementioned removal | | 1.00 | Set | ¥20,000 | ¥20,000 | |
| | Overhead Expenses | | 1.00 | Set | ¥10,500 | ¥10,500 | |

※ As it has been a long time since its completion, it is sunburned.
To remove stains from the damaged portions could only make them conspicuous.
Not all the oily substance can be removed.

| | |
|---|---|
| Total | ¥120,500 |
| Adjustment of Odd Amount | ▲ 500 |
| Recalculated Total | ¥120,000 |
| Consumption Tax | 9,600 |
| Grand Total | ¥129,600 |

Kongo Gumi Co., Ltd.

Date:  October  29,  2017

To: Superintendent Kosaku YAMADA

Judicial Police Officer

Chief of Narita Police Station

From:  Inspector  Koji  HIJIOKA

Judicial Police Officer

First Investigation Division

Criminal Investigation Department

Chiba Prefectural Police Headquarters

Dispatched to Narita Police Station for support

Investigation Report

Regarding the suspected vandalism cases relating to the suspect Masahide KANAYAMA that occurred in Narita-san Shinsho-ji Temple and Katori Jingu Shrine, I hereby report about the recalculated estimate of repair charges and the remeasurement of the affected portions in order to determine the damage to Katori Jingu Shrine.

I. Recalculated estimate of repair charges

(i) Date of receipt of estimate

October 12, 2017

(ii) The person who requested the estimate

Katori Jingu Shrine

(Ryuzo KODA, Director of General Affairs Division)

Location: 1697 Katori, Katori City, Chiba Prefecture

(iii) Receiver of the estimate

Sergeant Yusuke TACHIKAWA

Judicial Police Officer

First  Investigation  Division,  Criminal  Investigation  Department,  Chiba

1

Prefectural Police Headquarters

Dispatched to Narita Police Station for support

(iv) Details of the estimate

a. Repair shop who made the estimate

Konishi Decorative Arts & Crafts Co., Ltd.

Location: 3rd floor of Mita MK Building, 4-4-5 Shiba, Minato-ku, Tokyo

Phone: +81-3-5765-1481

(Person responsible for making the estimate of repair charges for Katori Jingu: SAITO)

b. Estimated amount

2,423,248 JPY

(v) How I obtained the estimate

a. Receipt of the estimate

It has been confirmed that the affected areas partially changed in color and size in Katori Jingu. Likewise, changes were observed in the condition of the affected portions pertaining to the crime, i.e., the black pole in the west front of the worship hall, the black pole in the east front of the worship hall, and the black stairs and the black offertory box in the worship hall. Therefore, in order to identify the current condition of the damage, I asked Katori Jingu to request the recalculated estimate of repair charges on October 5, 2017. Then, Sergeant TACHIKAWA received the recalculated estimate at Katori Jingu on October 12, 2017.

b. Interview with the repair shop

On October 5, 2017, I called the a/m repair shop and asked the estimated repair charges, how the charges were worked out, and the basis for calculation. The repair shop replied as follows:

(a) Estimated amount

The repair charges were estimated at 2,423,248 JPY, the same amount as the last time.

(b) Repair method and the reason

2

- As described the last time, the repair method is overcoating of lacquer over the damaged parts. The repair charges were estimated again as the same as the last time because the same work will be required.

- We will remove the current coating of lacquer, do the undercoating again and give a new coating of lacquer.

- This is because the ingredients of the oil used are still unknown.

- It appears the affected areas changed in color and size, but actually, the underlying damage from the oil has not disappeared. We have to remove the current lacquer which appears to contain any oil, do the undercoating again, and give a new coating of lacquer.

(vi) Outline of the repair shop who made the estimate

Konishi Decorative Arts & Crafts Co., Ltd. is a reputable repair shop specializing in repair, restoration and construction of cultural properties, historical buildings, fine arts and crafts. It was established in 1861 and has experience of repair works on 292 cultural properties (34 national treasures, 168 important cultural properties, 53 national/prefectural cultural properties, 21 municipal cultural properties and 16 historic structures).

II. Measurement of the damaged portions

(i) Result of the initial measurement

    a. Date of measurement

        April 17, 2015

    b. The person who measured the damaged portions

        (a) Police Officer Koji YAMADA

            Judicial Police Officer

            Katori Police Station

        (b) Police Officer Takahiro CHIBA

            Judicial Police Officer

            Katori Police Station

    c. Result of measurement

(a) The black pole in the west front of the worship hall

About 39 cm long and about 13 cm wide

(b) The black pole in the east front of the worship hall

About 15 cm long and about 9 cm wide

(c) The black stairs in the worship hall

About 205 cm wide and about 145 cm depth

(d) The black offertory box in the worship hall

About 165 cm wide and about 90 cm depth

Each items are defaced by oily substances, and moist stains and moist black spotty stains were observed on them within the above-mentioned area.

(ii) Result of the remeasurement

a. Date of remeasurement

October 24, 2017

b. The person who remeasured the damaged portions

The reporter of this report (Inspector Koji HIJIOKA)

c. Result of remeasurement

(a) The black pole in the west front of the worship hall

About 22 cm long and about 10.5 cm wide

(b) The black pole in the east front of the worship hall

About 12.5 cm long and about 2.5 cm wide

(c) The black stairs in the worship hall

About 205 cm wide and about 145 cm depth

(d) The black offertory box in the worship hall

About 165 cm wide and about 90 cm depth

Dried blackish stains and dried spotty black stains were observed on the items within the above-mentioned area.


III. Reference

A copy of the recalculated estimate is attached at the end of this report.

Quotation

Date: October 6, 2017

To: Priest Takeshi KATORI, Katori Jingu Shrine


Prepared by: Konishi Decorative Arts & Crafts Co., Ltd. (Seal)

Location: Mita MK Building 3F, 4-4-5 Shiba, Minato-ku, Tokyo, 108-0014

Phone number: 03-5765-1481

Fax number: 03-3455-9250


Please see our quotation as follows.

Hoping that we may have the opportunity of serving you.


Location: 1697 Katori, Katori City, Chiba Prefecture, Japan

Validity of quotation: Three months from the date of submission of the quotation

Quotation prepared by: SAITO


Locations to be restored: Locations defaced with an oily liquid around the worship hall of

Katori Jingu Shrine

## Total amount: 2,423,000 JPY

(including work and material expenses, but excluding consumption tax)

1

| Description | Work needed | Area/Work | Unit price | Amount | Remarks |
|---|---|---|---|---|---|
| 2 poles | Overcoating of lacquer | 7.00 m² | 64,000 JPY | 448,000 JPY | |
| Wooden stairs | Overcoating of lacquer | 15.90 m² | 64,000 JPY | 1,017,600 JPY | |
| An offertory box | Overcoating of lacquer | 4.50 m² | 64,000 JPY | 288,000 JPY | |
| Mounting/dismounting parts for overcoating | Parts themselves will not be replaced. | Package | | 180,000 JPY | |
| Expenses for scaffolding and curing | | Package | | 90,000 JPY | |
| Expenses for material transportation | | Package | | 30,000 JPY | |
| Subtotal | | | | 2,053,600 JPY | |
| Other expenses | | | | 369,648 JPY | |
| Subtotal | | | | 2,423,248 JPY | |
| Fractions rounded down | | | | -248 JPY | |
| Total cost | | | | 2,423,000 JPY | |

Date: October 31, 2017

To: Superintendent Kosaku YAMADA

Judicial Police Officer

Chief of Narita Police Station

From: Sergeant Mariko YAMADA

Judicial Police Officer

First Investigation Division

Criminal Investigation Department

Chiba Prefectural Police Headquarters

Dispatched to Narita Police Station for support

Investigation Report

Regarding the suspected vandalism cases relating to the suspect Masahide KANAYAMA that occurred in Narita-san Shinsho-ji Temple and Katori Jingu Shrine, I hereby report about the timeline of the suspect's activities based on the investigation including analysis of security cameras in order to clarify how the suspect moved on the date of the crime.

I. Reference (hereafter, "Investigation Report")

Investigation report on identifying the suspect pertaining to the case of vandalizing historic sites written by Inspector Satoshi KIMURA, Judicial Police Officer, First Investigation Division, Criminal Investigation Department, Chiba Prefectural Police Headquarters, Dispatched to Narita Police Station for support, dated on April 25, 2015.

II. Timeline of the suspect's activities on the date of the crime (March 25, 2015)

At 14:33, a car rented by Masahide KANAYAMA (Toyota Prius, License Number: Narita 300Wa・414) left the parking lot of Narita Airport Terminal 1 Building. (See "Investigation Report" page 8, for

1

English translation: page 5)

From 15:37 to 16:06, a man believed to be Masahide KANAYAMA was captured in a security camera installed in Narita-san Shinsho-ji Temple (See "Investigation Report" page 2, for English translation: page 2)

At 16:30, The Toyota Prius entered Higashikanto Expressway through Narita Tollgate (See "Investigation Report" page 5, for English translation: page 4)

At 16:41, The Toyota Prius exited Higashikanto Expressway through Sawara-Katori Tollgate (See "Investigation Report" page 5, for English translation: page 3)

From 16:57 to 17:10, a man believed to be Masahide KANAYAMA was captured in a security camera installed in Katori Jingu Shrine (See "Investigation Report" page 2, for English translation: page 2)

At 18:47, Masahide KANAYAMA checked in at the hotel "Spa & Resort Inubosaki Taiyonosato (Current Name: Hotel & Spa Tsukimi Inubosaki Taiyonosato)" located at 10292-1 Inubosaki, Choshi, Chiba. (See "Investigation Report" page 13, for English translation: page 7)

III. Comparison with the time usually required to travel

(i) From the parking lot of Narita Airport Terminal 1 Building to Narita Tollgate of Higashikanto Expressway

According to the internet search result, the time that is usually required from the parking lot of Narita Airport Terminal 1 Building, where Kanayama rented a car, to Narita Tollgate of Higashikanto Expressway is 8 minutes. (See Attachment 1.) This section took him 1 hour and 57 minutes.

(ii) From Sawara-Katori Tollgate of Higashikanto Expressway to the hotel

According to the internet search result, the time that is usually

2

required from Sawara-Katori Tollgate of Higashikanto Expressway to the hotel "Spa & Resort Inubosaki Taiyonosato (Current Name: Hotel & Spa Tsukimi Inubosaki Taiyonosato)" where Kanayama stayed is 1 hour and 4 minutes. (See Attachment 2.) This section took him 2 hours and 6 minutes.

IV. Investigative result

As described above, it was found that it took much more time for Kanayama to move from Narita Airport to Narita Tollgate and from Sawara-Katori Tollgate to the hotel compared with the time usually required for these sections. These time periods are consistent with the times in which a man believed to be Kanayama was captured in security cameras installed in Narita-san Shinsho-ji Temple and Katori Jingu Shrine.



Google　成田空港第1ターミナル駐車場（P1）から 東関東自動 車 4.6 km、8 分
車道(湾岸市川~潮来)　Drive 4.6 km, 8 min

From the parking lot of Narita Airport Terminal 1 to Narita Tollgate of Higashikanto Expressway

国道295号線 経由　　　　　　　　　　　　　　　　　　　　8 分　8 min

⚠ このルートでは有料区間を通過します。　　　　　　　　　　　　4.6 km

別紙2
Attachment 2

## From Sawara-Katori Tollgate of Higashikanto Expressway
## to Hotel & Spa Tsukimi Inubosaki Taiyonosato

Google 東関東自動車道(湾岸市川~潮来) から ホテル＆ スパ 月美 犬吠埼 太陽の里

車 45.4 km、1 時間 4 分
Drive 45.4 km, 1 hour 4 min



地図データ ©2017 Google、ZENRIN   5 km

| | | |
|---|---|---|
| 県道55号線 経由 | 1 時間 4 分 **1 hour 4 min** | |
| ⚠ このルートでは有料区間を通過します。 | 45.4 km | |
| 国道124号線 経由 | 1 時間 6 分 | |
| | 43.8 km | |
| 利根水郷ライン/国道356号線 と 国道124号線 経由 | 1 時間 9 分 | |
| | 47.4 km | |

Date:  October  29,  2017

To: Superintendent Kosaku YAMADA

Judicial Police Officer

Chief of Narita Police Station

From:  Inspector  Koji  HIJIOKA

Judicial Police Officer

First Investigation Division

Criminal Investigation Department

Chiba Prefectural Police Headquarters

Dispatched to Narita Police Station for support

Investigation Report

Regarding the cases that occurred in Narita-san Shinsho-ji Temple and Katori Jingu Shrine on March 25, 2015, I hereby report about the background of Kazunobu YAMAZAKI, Judge of the Sakura Summary Court, who issued the arrest warrants in the cases.

I. Background of the judge who issued the Arrest Warrants in the Cases

For the background of Kazunobu YAMAZAKI, Judge of the Sakura Summary Court, who issued the arrest warrants in the cases, posted on the Internet Judge search site, please see below (since 2008). The arrest warrants were issued after thorough checking by the former President of the Matsue District and Family Court, who are knowledgeable and experienced in the legal field.

(Background)

From April, 2007 to April, 2009

Chief Judge of the Hachioji Branch of the Tokyo District and Family Court

From April, 2009 to March, 2010

1

Chief Judge of the Tachikawa Branch of the Tokyo District and Family Court

From March, 2010 to April, 2011

Chief Judge of the Okayama Branch of the Hiroshima High Court

From April, 2011 to September, 2012

President of the Okayama Branch of the Hiroshima High Court

From September, 2012 to July, 2014

President of the Matsue District and Family Court

From August, 2014 to date

Judge of the Sakura Summary Court

II. Source

[www.e-hoki.com/judge/2977.html?hb=1](www.e-hoki.com/judge/2977.html?hb=1)

This is to certify that documents of this kind are admissible as evidence in Japanese court in its examination of requests for extradition.

November 2, 2017

Yoshimitsu    YAMAUCHI

Prosecutor

Director

International Affairs Division

Criminal Affairs Bureau

Ministry of Justice

　上の文書は、林幹也が日本語を英語に翻訳したものであり、その内容は日本語と相違ないことを認証します。

千葉県警察本部警務部教養課
通訳センター長
一般職員　　　林　幹也

林　幹也

　十分な能力を有する上の翻訳人が翻訳したものであることを証明します。

千葉県警察本部刑事部組織犯罪対策本部
国際捜査課長
警　　視　　　小川　智

小川　智

This is to certify that Mikiya HAYASHI has translated the foregoing documents into English and that it is true to the Japanese original.

*Mikiya Hayashi*

Mikiya HAYASHI
Civilian Officer
Chief of Interpretation Center
Education and Training Division
Police Administration Department
Chiba Prefectural Police

This is to certify that the said officer, with sufficient ability, has translated the Japanese original into English.

*Satoshi Ogawa*

Satoshi OGAWA
Superintendent
Chief of International Criminal Investigation Division
Organized Crime Control Headquarters
Criminal Investigation Department
Chiba Prefectural Police

# Exhibit 25

Specialist Opinion

Table Of Content

I.    Regarding Treaty Article 1                                          3

        1.    Definition of Article 1                                     3

        2.    Kanayama is Not a Fugitive Suspect                         4

        3.    The Police Cannot Prosecute, Try, or Execute Punishment    5

        4.    Conclusion                                                 6

II.   Regarding Treaty Article 3                                         6

        1.    Definition of Article 3                                    6

        2.    Regarding Police Agency Evidence                           6

        3.    Conclusion                                                 9

III.  Regarding Treaty Article 7                                         10

        1.    Definition of Article 7                                    10

        2.    The Facts of the Crime the Police Agency States in the Request    10

        3.    Other Offenses the Prefectural Police Will Us to Detain Kanayama   11

        4.    The Necessity for the Prefectural Police to Detain Kanayama   12

        5.    Conclusion                                                 13

IV.  Regarding Treaty Article 8                                          14

1.  Definition of Treaty Article 8                                        14

2.  Regarding the Elements of the Facts Constituting Destruction          15

    of a Building

3.  Regarding the Arrest Warrant                                          19

4.  The Police Agency Has Not Attached Sufficient Documentation           22

    Required in Article 8

V.  Conclusion                                                            22

The U.S. Cannot Extradite Masahide Kanayama to Japan Based on the

Treaty on Extradition Between Japan and the United States of America

The purpose of this opinion is to examine whether or not the National Police Agency of Japan (hereafter referred to as "Police Agency") has the authority against Masahide Kanayama (hereafter referred to as "Kanayama") to prosecute, try, or execute punishment, whether the facts of the crime are specified with sufficient supporting evidence, whether or not the Request for Extradition (hereafter referred to as "Request") adheres to the criteria set forth in the Treaty on Extradition Between Japan and the United States of America (hereafter referred to as "Treaty"), and whether or not Kanayama will be detained and prosecuted for an offense other than that for which extradition is being requested.

In the original Japanese version, the Police Agency states: *Request for Extradition of a Fugitive Suspect* as their title. The English translation omits the *fugitive* portion. As the Japanese version is the original, this opinion is made based on the Japanese version of the Request.

I.   Regarding Treaty Article 1

  1.   Definition of Article 1

Article 1 states: *Each Contracting Party undertakes to extradite to the other Party, in accordance with the provisions of this Treaty, any person found in its territory and sought by the other Party for prosecution, for trial, or to execute punishment for any offense specified in paragraph 1 of Article II. When the offense was committed outside the territory of the requesting Party, the conditions specified in paragraph 1 of Article VI, inter alia, shall be applied.*

*Found* is the result of a search, and a search is conducted because a person is a fugitive. The title of the Japanese Request for Extradition Section 1 specifies *fugitive suspect* as the object of extradition. The same *fugitive suspect* also appears in Section 6 and Section 7.

The term *fugitive suspect* is used in order to meet the requirements of the phrase *any person found in its territory* stated in Treaty Article 1. *Fugitive suspect* is based on the Police Agency's interpretation that the object of extradition is limited to a *fugitive suspect*. I agree with this interpretation that the object of extradition is a *fugitive suspect*.

2.   Kanayama is Not a Fugitive Suspect

Kanayama's rental car contract lists Kanayama's address as 150 E 55th Street FL5 New York NY 10022 USA, and in the report dated December 7, 2015 made by a judicial policeman, it is reported that Kanayama's sister, Rika, provided information that

4

Kanayama is an OB-GYN with a private practice in NY, thus, it is clear that Kanayama is not a fugitive.

Furthermore, Kanayama retained me as his Defense Counsel and made an Attorney Selection and Appointment Notice dated June 5, 2015, which was sent to the Chiba Prefectural Police Headquarters (hereafter referred to as "Prefectural Police"). Officer Ebato of the Prefectural Police received and signed the certificate of receipt on June 18, 2015. This fact proves that Kanayama is not a fugitive suspect, but instead showed that he is going to defend himself against the authorities' allegations against him.

3.   The Police Cannot Prosecute, Try, or Execute Punishment

The purpose of extradition stated in Treaty Article 1 is for prosecution, for trial, or to execute punishment. However, the Police Agency does not possess any authority to prosecute, try, or execute punishment against Kanayama. The authority given to any police is to investigate a crime, gather evidence, and send the case to the Prosecutor's Office[1]. The Prosecutor's Office is a part of the Ministry of Justice and the Prosecutor

---

[1]  Criminal Procedure Code Article 203(1)    When a judicial police officer has arrested a suspect through an arrest warrant or has received a suspect who was arrested through an arrest warrant, said officer must immediately inform the suspect of the outline of the suspected crime and the fact that the suspect may appoint a defense counsel and then, giving the suspect an opportunity for explanation, said officer must immediately release the suspect when believing that it is not necessary to detain the suspect, or must carry out the procedure of referring the suspect together with the documents and articles of evidence to a public prosecutor within 48 hours of the suspect being placed under physical restraint when believing that it is necessary to detain the suspect.

5

is the only one authorized to prosecute[2], try, and execute the judgment[3]. Thus, the

Ministry of Justice is the only authorized agency capable of requesting extradition.

4.    Conclusion

Kanayama is not a fugitive suspect and the Police Agency also has no authority to

request extradition; therefore, the current request for extradition does not meet the

requirement of Treaty Article 1.

II.    Regarding Treaty Article 3

1.    Definition of Article 3

Article 3 states: *Extradition shall be granted only if there is sufficient evidence to*

*prove either that there is probable cause to suspect, according to the laws of the requested*

*Party, that the person sought has committed the offense for which extradition is requested*

*or that the person sought is the person convicted by a court of the requesting Party.*

2.    Regarding Police Agency Evidence

Only the first portion of Article 3 regarding *sufficient evidence* is relevant to this

case.

---

[2]  Criminal Procedure Code Article 247    Prosecution is filed by a public prosecutor.
[3]  Criminal Procedure Code Article 472(1) Article 472(1)The execution of a decision is to be directed by a public prosecutor of the public prosecutor's office corresponding to the court that rendered said decision; provided, however, that this shall not apply in the cases set forth in the proviso to paragraph (1) of Article 70, the proviso to paragraph (1) of Article 108, or any other case in which the court or judge should direct the execution of its decision.

Section 6 of the Request is *Outline of Evidential Facts Constituting Sufficient Cause to Believe that the Suspect Committed the Offenses pertaining to the Extradition Request.* Under this section, the Police Agency states: *Such defacing incidents were confirmed after April 9, 2015 in the premises of Katori Jingu Shrine and Narita-san Shinsho-ji Temple located in Chiba Prefecture. The Chiba Prefectural Police received victim's reports for vandalism from Katori Jingu Shrine and Narita-san Shinsho-ji Temple on April 10, 2015 and April 13, 2015, respectively. (See Exhibit #8, #9, #10, #11, #12, and #13).*

*The surveillance cameras installed at the said shrine and temple filmed on March 25, 2015 a man in same clothes behaving in a suspicious manner:*

*(1) The man touching the poles on the east side of So-mon (Main Gate) in the premises of Narita-san Shinsho-ji Temple; and*

*(2) The man touching the right and left poles of Honden (Main Hall) in the premises of Katori Jingu Shrine, swinging up his right hand in front of the offertory box and splashing liquid over it.*

*Based on the analysis of footage of security cameras in Narita-san Shinsho-ji Temple and Katori Jingu Shrine, investigators tried to identify possible transportation methods the suspect may have used and concluded it impossible for a same person to commit offenses at both locations during the time frame without using a car. The car used*

*by the suspect was identified as a rent-a-car (License plate number: Narita300Wa414).*

*Investigators worked to identify the car renter and found Masahide Kanayama who rented*

*the car around then. He presented his passport as ID document to rent the car. As a result*

*of comparison between a face photo on the passport and security camera images taken*

*at the said shrine and temple, they were very much alike.*

*It was also found that he declared himself as a US resident when he applied for*

*passport in 2013. (See exhibit #5, #14 and #15)*

*Police requested Professor Hashimoto, Tokyo Dental College to perform*

*comparison for identification between Kanayama's face photo on his passport and the*

*suspect's image taken by security cameras in the premises of Narita-san Shinsho-ji Temple*

*and Katori Jingu Shrine. Specifically, he did comparisons (1) between Kanayama's face*

*photo on his passport and the suspect's image taken by security cameras in Narita-san*

*Shinsho-ji Temple and also (2) between the suspect's images taken by Narita-san Shinsho-*

*ji Temple and Katori Jingu Shrine. As a result, the expert concluded with a highest degree*

*of certainty that they were identical. Therefore, Masahide Kanayama was identified as*

*the suspect in both incidents. (See Exhibit #5, #15 and #16)*

*As described above, the Chiba Prefectural Police identified Masahide Kanayama*

*as the suspect and determined vandalism as So-mon (Main Gate) in the premises of*

*Narita-san Shinsho-ji Temple and at Honden (Main Hall) in the premises of Katori Jingu*

*Shrine as the criminal facts based on the security camera footage. Accordingly, the Chiba*

*Prefectural Police obtained arrest warrants against Kanayama for vandalism. (See*

*Exhibit #1, #2, #3, #4, #5, #6 and #7)*

There are 24 exhibits attached to the Request. Direct evidence to prove the alleged

destruction to the building are the photos of the structures, stained poles, offertory box,

and stairs. There are no remnants of stain on the poles, offertory box, or stairs; therefore,

it cannot be proven that there was a destruction of a building. There are very few photos

of the building itself, and in looking at these photos, it does not show that the discoloration

on the poles and stairs takes away from the appearance or aesthetic beauty of the building.

Accordingly, there is no evidence whatsoever that the building was destroyed.

3.  Conclusion

The evidence that the Police Agency submitted lacks any evidence that the building

was destroyed. The stains on the poles, offertory box, and stairs does not destroy the

appearance or aesthetic beauty of the building.

Details regarding damage to the appearance or aesthetic beauty will be discussed

later in IV (3).

There is no sufficient evidence proving destruction of a building; therefore, the U.S.

shall not grant the request to extradite Kanayama.

III.   Regarding Treaty Article 7

1.    Definition of Article 7

Article 7 states: *The requesting Party shall not, except in any of the following circumstances, detain, prosecute, try nor punish a person surrendered under this Treaty for an offense other than that for which extradition has been granted, nor extradite him to a third State, provided that these stipulations shall not apply to offenses committed after the extradition.*

The portion of the Article relevant to the Request is *detain.*

2.   The Facts of the Crime the Police Agency States in the Request

The Polie Agency states the facts as follows:

(1) *At around 4:06 p.m. on March 25, 2015, in the premises of Narita-san Shishoji Temple located at 1 Narita, Narita City, Chiba Prefecture, the suspect defaced three poles on the east side of So-mon (Main Gate) under the management of the Chief Temple Manager Shodai KISHIDA with an oily liquid (causing the monetary damages 120,500 Yen). In this way, the suspect destroyed the structure owned by another.*

(2) *At around 5:02 p.m. on March 25, 2015, in the premises of Katori Jingu Shrine*

*located at 1697 Katori, Katori City, Chiba Prefecture, the suspect defaced a black*

*pole located in the west front of the worship hall and another black pole located in*

*the east front of the worship hall, and also black stairs and a black offertory box*

*located in the front of the worship hall, both under the management of Priest Shoji*

*TAKAHASHI with an oily liquid (causing monetary damages 2,423,248 Yen). In this*

*way, the suspect destroyed the structure owned by another.*

3.  Other Offenses the Prefectural Police Will Use to Detain Kanayama

Section 6 of the Request is *Outline of Evidential Facts Constituting Sufficient Cause*

*to Believe that the Suspect Committed the Offenses pertaining to the Extradition Request.*

Under this section, the Police Agency states: *From the information provided by the Nara*

*Prefectural Police, it was also confirmed that the man in this case closely resembled a*

*man captured by a security camera in the premises of Asuka Dera Temple in Nara City*

*who splashed oily liquid over Jizoson (Guardian Deity of Children) on March 28, 2015.*

*(See Exhibit #5).* Furthermore, it goes on to say: *Investigators checked the videos posted*

*by him on YouTube and found he had vandalized historic sites with oil in an anonymous*

*shrine (later identified as Miho Shrine in Shimane Prefecture) to expel evil spirits. The*

*video showed he poured oil over the poles in the said shrine in the same manner as he did*

*in this case, which corroborated his offenses and suggested his motivation behind them.*

11

*(See Exhibit #17 and #18).*

These facts are **NOT** mentioned in Section 2 of the Request: *Summary of the Facts.*

Furthermore, the arrest warrant dated July 15, 2016 Section 6 clearly states: *The suspect fled Japan immediately after committing the offense, and while knowing that the arrest warrant has been issued against him regarding another offense currently under investigation…*

4.  The Necessity for the Prefectural Police to Detain Kanayama

The Prefectural Police needs to detain Kanayama because it is evident that the submitted Exhibits 1 through 24 cannot prove Kanayama's guilt enough to prosecute him.

Since the Police Agency has attached to the Request the arrest warrant obtained by the Prefectural Police, once Kanayama is arrested, he will be detained, then arrested and detained a total of 4 times (i.e., one arrest and detainment each for Narita-san Shinshoji Temple, Katori Jingu Shrine, Asuka Dera Temple, and Miho Shrine). Kanayama's arrest and detainment will be as follows:

The Prefectural Police will first arrest Kanayama regarding Narita-san Shinshoji Temple

①   Once arrested, Kanayama will initially detained for 48 hours by the Prefectural Police (Criminal Procedure Code Article 203-1).

②     Following this, his case will be sent to the Prosecutor. The Prosecutor will detain Kanayama for another 24 hours (Criminal Procedure Code Article205-1).

③     Afterwards, the Prosecutor will request for further detainment.

The Judge will grant the Prosecutor's request (Criminal Procedure Code Article 207-5). Kanayama will be detained for 10 days.

④     Once the 10 days expire, the Prosecutor will request an extension for an additional 10 days (Criminal Procedure Code Article 208-2). The Judge will again grant the extension.

⑤     Kanayama will be detained for a total of 23 days since his initial arrest.

⑥     Next, the Prefectural Police will re-arrest Kanayama regarding Katori Jingu Shrine.

⑦     Processes ① through ④ will be repeated.

Additionally, Kanayama will be arrested and detained regarding the temple in Nara Prefecture and shrine in Shimane Prefecture, resulting in a total of 92 days in detainment.

In reading the content of the Request in its original version, it is clearly implied that the Prefectural Police will indeed use the above process to their advantage and detain Kanayama for the full 92 days.

13

5.   Conclusion

It is blatantly evident that the Prefectural Police will detain and interrogate Kanayama for the facts other than that which is listed in the Request for Extradition (i.e., the incidents at Nara and Shimane Prefectures). This states that an arrest warrant was already issued against Kanayama for the incidents at Nara and Shimane Prefecture, which is not part of the facts of the crime for which extradition is being requested.

In violation of Article 7, it is evident that the Prefectural Police will indeed detain and interrogate Kanayama for a separate offense (i.e., incidents at Nara and Shimane Prefectures); therefore, this Request should not have been submitted.

IV.   Regarding Treaty Article 8

1.   Definition of Article 8

Article 8 states: *1. The request for extradition shall be made through the diplomatic channel. 2. The request for extradition shall be accompanied by: (a) Documents which describe the identity of the person sought; (b) A statement of the facts of the case; (c) The texts of the laws describing the essential elements and the designation of the offense for which extradition is requested; (d) The texts of the laws describing the punishment for the offense; and (e) The texts of the laws describing the time limit on the prosecution or the execution of punishment for the offense. 3. When the request for extradition relates*

*to a person who has not yet been convicted, it shall be accompanied by: (a) A copy of the warrant of arrest issued by a judge or other judicial officer of the requesting Party; (omitted).*

The issue relevant to this Article is *2 (b) A statement of the facts of the case and 3 (a) A copy of the warrant of arrest issued by a judge or other judicial officer of the requesting Party.*

2.    Regarding the Elements of the Facts Constituting Destruction of a Building

The facts of the crime stated in the Request does not meet the requirements for the elements constituting destruction of a building.

(1)    The Japanese Supreme Court decision on the requirements for the elements constituting destruction of a building

Regarding the facts for destruction of a building, the Supreme Court of Japan rendered a decision on January 17, 2006 that a public toilet located in a park, whose white outer wall is defaced with large writings of "anti-war", "against war", and "spectacle society" with red and black lacquer spray and as a result the appearance and aesthetic beauty of the building is significantly defaced, consequently making it significantly difficult to restore the building to its original state. These facts fall under Penal Code Article 260, destruction of a building.

15

(2)   Comparison of the facts of the Request and the Supreme Court decision

The *Summary of the Facts* in the Request (1) states: …*defaced three poles on the east side of So-mon (Main Gate) …with an oily liquid* and in (2) states: *… defaced a black pole located in the west front of the worship hall and another black pole located in the east front of the worship hall, and also black stairs and a black offertory box located in the front of the worship hall, … with an oily liquid.*

When compared to the Supreme Court decision and the facts stated in the Request, the facts in the Request has no expression that the appearance or aesthetic beaty of the building was destroyed.

(3)   Destruction is damage to the appearance or aesthetic beaty of a building

The Police Agency submitted an investigation report prepared by the Prosecutor, who uses the above mentioned Supreme Court decision as its basis for damage to the appearance and aesthetic beauty of the temple and shrine.

In this case, it needs to be determined how the stains on the poles, offertory box, and stairs damage the appearance or aesthetic beaty of a building when looking at it in full view. The appearance or aesthetic beaty of a building can only be determined from a full view of the building itself.

In July 11, 2015, I visited Narita-san Shinshoji Temple and looked at the So-mon

(Main Gate). I could not get a full view of the gate unless I was about 20 meters away. I saw the 3 poles from that distance, but could only see the color of the poles and nothing regarding its surface condition. Even if there was some small discoloration of the poles, I doubt it can be visible from that distance. The width of the gate is 14.181 meters and the height is 14.97 meters. The surface area is 212, 303, 751 sq. m. In order to compare this to the size of the stains, the numbers need to be converted into centimeters. When converted, the surface area is 21, 230, 375, 100 square cm. One of the poles had a stain of 4 cm x 2 cm, equaling 8 sq. cm. Another pole had a stain of 6 cm x 2 cm, equaling 12 sq. cm. The third pole had a stain of 5 cm x 2 cm, equaling 10 sq. cm. The stains are miniscule and invisible compared to the total surface area of 21, 230, 375, 100 square cm. The stains on the poles do not destroy the appearance or aesthetic beauty of a building.

The same can be said of Katori Jingu Shrine. The distance from which the main hall can be fully viewed is about 15 meters away. It is impossible to detect a small stain on a pole, the offertory box or the stairs.

(4)    The Request does not state in what manner the building was destroyed

The Police Agency states *….defaced…with an oily liquid.* The Japanese version says *oily liquid of unknown ingredient*. This is different from the English translation.

However, it does not state what kind of oily liquid and how it can destroy a building. The Supreme Court decision specified a red and black lacquer spray on a white wall; in contrast, the Request does not state how an oily liquid destroyed a building. The stain no longer exists, so it may be that the liquid was water and may have interacted with some other oily substance that may have been already been on the surface of the poles, offertory box, and stairs. The stain has already evaporated, so if my speculation were accurate, then such small amount of water cannot destroy a building. The Supreme Court decision clearly states that a red and black lacquer spray on a white wall obviously damages the appearance or aesthetic beauty of a building; therefore, the building in destroyed. The Request has no such details on how a small amount of liquid can or has destroyed a building.

(5)   The Request also does not state to what extent the appearance or aesthetic beauty of the building was destroyed

The Supreme Court decision also states that restoring the appearance or aesthetic beauty of the building to its original state is significantly difficult. The Request does not mention anything about the extent to which the appearance or aesthetic beauty was destroyed. As a side note, the stains on the poles, offertory box, and stairs naturally evaporated and no work was done to "restore" to its original state. This may be the reason

18

that the Police Agency could not state to what extent the appearance or aesthetic beauty was destroyed.

(6)   Conclusion

The *Summary of the Facts* stated in the Request severely lacks the elements constituting destruction of a building. Therefore, the attached statement of the facts of the crime is not the document required under Article 8-2(b).

3.   Regarding the Arrest Warrant

Article 8-3(a) states: *When the request for extradition relates to a person who has not yet been convicted, it shall be accompanied by: (a) A copy of the warrant of arrest issued by a judge or other judicial officer of the requesting Party;*

(1)   The attached *Request for Warrant of Arrest* is comprised of false information as follows:

1. Occupation: Unknown

2. Present Address: Unknown

However, the Prefectural Police already knew Kanayama's occupation and address, as I previously point out. Furthermore, the reason stated for having the warrant issued states: *...he has been on the run outside Japan....while knowing that the arrest warrant has been issued against him regarding another offense currently under*

*investigation…he seems determined to remain on the run and it is quite likely he will*

*attempt to destroy evidence…*

This statement is also false because the Prefectural Police already knew that Kanayama had been living in the U.S. and has a private practice as an OB-GYN. Additionally, it is impossible for Kanayama to destroy evidence because the evidence was already in the possession of the Prefectural Police.

(2)   The Prefectural Police did not conduct an investigation as prescribed in Criminal Procedure Code

Criminal Procedure Code Article 198 stipulates that the Prefectural Police has authority to investigate Kanayama [4] . Additionally, they have authority to request Kanayama to appear for questioning and to prepare a statement. Although Kanayama lives in the U.S., since he retained me as his Defense Counsel and submitted such notification to the Prefectural Police, they were able to request Kanayama's appearance through me since I live here in Japan. However, the Prefectural Police never contacted me about wanting to question Kanayama.

---

[4]  Criminal Procedure Code Article 198(1) A public prosecutor, public prosecutor's assistant officer or judicial police official may ask any suspect to appear in their offices and interrogate said person when it is necessary for the investigation of a crime; provided however, that the suspect may, except in cases where said person is under arrest or under detention, refuse to appear or after said person has appeared, may withdraw at any time.

(3)    Routine practice in issuance of a warrant – legal loophole

Crim. Pro. Code Art. 199-2 stipulates: *If a judge deems that there exists sufficient probable cause to suspect that the suspect has committed an offense, said judge issues the arrest warrant set forth in the preceding paragraph, upon the request of a public prosecutor or a judicial police officer (in the case of a judicial police officer who is a police official, only a person designated by the National Public Safety Commission or the Prefectural Public Safety Commission and who ranks as equal to or above chief inspector; the same applies hereinafter in this Article); provided however, that this does not apply if the judge deems that it is clearly not necessary to arrest the suspect.*

Regarding the necessity of issuing an arrest warrant, Rules of Criminal Procedure Article 143-3 it stipulates: *Even if a judge who has received a request for an arrest warrant finds that there are grounds for arrest, when the judge finds that there is clearly no need for an arrest due to there being no risk of the suspect to flee or destroy evidence of crime, in light of the age and environment of the suspect, the gravity and mode of the offense, and various other circumstances, the judge must dismiss the request for an arrest warrant.*

Despite the above law and rule, in routine practice, a judge automatically issues an arrest warrant without judging the necessity of the arrest warrant as long as probable cause

of a crime exists. The authentic interpretation and routine practice of the above law and rule, is that if a judge cannot make a decision on the necessity of issuing an arrest warrant, then the judge will automatically issue the arrest warrant (Revised Criminal Procedure Code page 362 published by Yuhikaku Co., Ltd.    January 20, 1970).

(4)    Conclusion

It is evident that Kanayama can neither run nor destroy evidence considering his professional situation. Regardless of the absent risk, the Prefectural Police requested an unnecessary arrest warrant with false information and the judge issued it in accordance to routine practice. Therefore, the issued arrest warrant is not the required arrest warrant prescribed in Article 8-3(b).

4.    The Police Agency Has not Attached Sufficient Documentation Required in Article 8

As explained above, the *Summary of the Facts* in the Request is not a statement of the facts of a destruction of a building and the arrest warrant is not the arrest warrant required in Article 8-3(a).

V.    Conclusion

The Police Agency has no authority to prosecute, try, or execute punishment; therefore, they cannot submit this Request. Furthermore, Kanayama is **not** a fugitive;

therefore, the U.S. does not need to undertake the process of extraditing Kanayama under Treaty Article 1.

The Request also fails to provide sufficient evidence for destruction of a building; therefore, extradition shall not be granted under Treaty Article 3.

It is evident that the Prefectural Police will detain Kanayama for an offense other than that for which extradition has been granted as the Request clearly mentions that they have already prepared an arrest warrant for a separate offense (i.e., incident in Nara and Shimane Prefectures); therefore, this Request cannot and should not have been submitted, in accordance to Treaty Article 7.

Treaty Article 8-2(b) requires that a *statement of the facts of the case* be attached and 8-3(a) requires a *warrant of arrest issued by a judge or other judicial officer.* Neither of these documents have been attached to the Request; therefore, the Request itself is insufficient.

The Police Agency cannot request Kanayama's extradition based on the Treaty; therefore, the Request should be rejected. I heard that the issue for this case is whether or not dual criminality exists. However, as the statement of the facts of the crime is not attached, I believe that the U.S. is unable to judge the existence of dual criminality.

# Exhibit 26